UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                             CASE NO.

PINAL J. SHAH                                      05-01929-5-ATS

    DEBTOR


**ORDER REGARDING MOTION TO AVOID JUDICIAL LIEN**

Pending before the court is the motion filed by the chapter 13 debtor, Pinal J. Shah, to avoid, pursuant to 11 U.S.C. § 522(f), the judicial lien held by Peoples Community Bank ("PCB"). A hearing was held in Raleigh, North Carolina on June 23, 2005.

Ms. Shah filed a petition for relief under chapter 13 of the Bankruptcy Code on May 11, 2005. One of the debtor's assets is her residence at 210 Chandler Chase Court in Morrisville, North Carolina, which she owns with her non-debtor spouse as tenants in common. Ms. Shah and her husband purchased the property, as tenants in common, before they were married.

PCB obtained a judgment against the debtor in the amount of $39,671, which is a judicial lien against her interest in the residence. Ms. Shah claimed a $1 exemption in the property, and moved to avoid the lien pursuant to 11 U.S.C. § 522(f).

The property is listed in the debtor's schedules with a value of $175,000. In addition to being encumbered by PCB's judicial lien, it

is subject to three deeds of trust.  The priority of the encumbrances is as follows:

> First deed of trust (executed by the debtor and her husband) is to Countrywide Homes Loans, Inc. with a balance of $114,943.00.  The deed of trust was recorded on July 11, 2002, and is the primary mortgage on the property.
>
> Second deed of trust (executed by the debtor and her husband) is to Countrywide Homes Loans, Inc. with a balance of $22,000.  The deed of trust was recorded on November 20, 2003, and secures an equity line.
>
> Judicial lien in favor of Peoples Community Bank, against the debtor, with a balance of $39,671.00, docketed on September 16, 2004.
>
> Third deed of trust (executed by the debtor and her husband) is to Suntrust Bank with a balance of $373,000.00.  This deed of trust was recorded on October 5, 2004, and secures a line of credit given to Jiger Shah, D.D.S., P.A., to begin a dental practice.

The debtor contends that the plain language of the statute allows avoidance of the lien in its entirety.  She argues further that priority is irrelevant for purposes of the statute, which makes no mention of accounting for priority as between judicial and consensual liens and instead dictates a simple, straightforward mathematical formula.  The statute speaks only to "the lien," which is the judicial lien the debtor seeks to avoid, and "all other liens on the property," without restriction.  11 U.S.C. § 522(f)(2)(A).

PCB contends in response that in the absence of any controlling precedent from the Fourth Circuit, the court should consider the relative priority of the liens.  PCB reasons that to allow the debtor

2

to avoid PCB's lien while retaining the junior consensual, nonavoidable deed of trust to Suntrust Bank would upset state priority rules and could ultimately result in a "taking" in violation of the United States Constitution.  See In re Dolan, 230 B.R. 642 (Bankr. D. Conn. 1999).  PCB's statutory argument stems from its primary grievance, which is that the Suntrust Bank lien is both qualitatively different from the types of liens that Congress sought to prefer over judicial liens and also suspect on its own terms, given the nature of the lien and the circumstances of the bankruptcy filing.[1]

Section 522(f)(1) provides that a debtor may avoid the fixing of a judicial lien "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section."  11 U.S.C. § 522(f)(1)(A). Subsection (f) goes on to provide, in relevant part, as follows:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
>
>     (i) the lien;

---

[1] The parties also disagree about whether the court should apply the value of the debtor's half-interest or, alternatively, the full fair market value of the property in the § 522(f) equation.  The question is irrelevant because the sum of the judicial lien, all other liens on the property, and the amount of the debtor's exemption exceeds both the debtor's half-interest in and the total fair market value of the property.  Because the choice of valuation makes no difference, the court will not address the issue.

3

>    (ii) all other liens on the property; and
>
>    (iii) the amount of the exemption that the debtor
>    could claim if there were no liens on the
>    property;
>
> exceeds the value that the debtor's interest in the property
> would have in the absence of any liens.
>
> (B) In the case of a property subject to more than 1 lien,
> a lien that has been avoided shall not be considered in
> making the calculation under subparagraph (A) with respect
> to other liens.

11 U.S.C. §§ 522(f)(2)(A) and (B).

For the reasons that follow, the court concludes that the plain language of the statute permits the debtor to avoid the lien. In construing any statute, the court looks first to the language of the statute to ascertain its plain meaning. In some cases, that "is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S. Ct. 192, 194 (1917) (internal quotations omitted)). The Court of Appeals for the Fourth Circuit recently explained that the "Plain Meaning Rule" is accepted as a "settled principle," and provides that "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language . . . ." In re Sunterra, 361 F.3d 257, 265

(4th Cir. 2004)(quoting Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001)) (internal quotations omitted).

Because the statutory scheme is in this instance both "coherent and consistent," the court has no basis on which to inquire further into the meaning of the statutory language. Ron Pair, 489 U.S. at 240, 109 S. Ct. at 1030. "The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." Ron Pair, 489 U.S. at 242, 109 S. Ct. at 1031 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S. Ct. 3245, 3250 (1982))(internal quotations omitted). In this instance, there is no grammatical error in the statute to cast doubt on its interpretation, and no internal ambiguity evident to the court: rather, there is simply a complete, and intentional, lack of the qualifying language that would be advantageous to PCB. The court's function therefore is simply to enforce the statute "according to its terms." Lamie v. United States Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004)(internal citations omitted).

In this case, there is only one judicial lien. It is apparent from the plain language of the statute that judicial liens are to be treated differently from consensual liens, regardless of the relative priorities of judicial (or certain nonpossessory, nonpurchase-money security interests) as opposed to consensual liens. If the debtor

sought to avoid more than one judicial lien, then some prioritization of the judicial liens would be necessary to comply with § 522(f)(2)(B). But again, this case involves only one judicial lien, so prioritization is simply not an issue. There is no statutory basis for it, and prioritization would be contrary to the plain language of the statute.

Although the court relies on the plain language of the statute in reaching its conclusions, it is worth noting that the legislative history of § 522(f) is wholly consistent with the court's construction of the statute. The 1994 Bankruptcy Amendments amended § 522 to provide, in § 522(f)(2), a simple "mathematical formula for the courts to apply to determine whether a lien impairs the debtor's exemption." 4 Collier on Bankruptcy ¶ 522.11[3] at p. 522-80 (15th ed. rev. 2005). The commentary to the Act specifically notes that the legislation was intended to overrule a Third Circuit case, In re Simonson, 758 F.2d 103 (3rd Cir. 1985), in which the nonavoidable liens encumbering the subject property exceeded its value, as they do in this case. 4 Collier on Bankruptcy ¶ 522.11[3] at p. 522-83 (construing 140 Cong. Rec. at H10,769 (daily ed. Oct. 4, 1994), reprinted in App. Pt. 9(b) at p. 9-94). According to the commentary's interpretation of the case, the Simonson court held that "a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the mortgages on the property exceeded the value of the property." It was

this holding that the amendment to § 522 specifically overruled. Collier on Bankruptcy App. Pt. 9(b) at p. 9-94.

In sum, although the results reached by applying the plain language of a statute may sometimes be surprising, the result in this case is nonetheless what Congress intended, because Congress sought to accord preference and advantage to consensual lienholders as opposed to the holders of judicial liens. See generally 4 Collier on Bankruptcy ¶ 522.11[3] at pp. 522-80 to 522-82. This policy decision is in keeping with Congress' desire to afford to debtors a "fresh start" unencumbered by residual liens that would impede their ability to build on equity created by postpetition income.

Though the court applies the plain meaning of the statute, competing policy considerations discussed by other courts do provoke both thought and occasionally concern about potential abuses of § 522(f), or unearned "windfalls." On this point, the court agrees with the Bankruptcy Appellate Panel for the Ninth Circuit, which in In re Charnock made the following observation:

> We are not entirely comfortable with the equities of literally applying the statutory formula in this situation. It may give a debtor contemplating bankruptcy the ability to wipe out judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the exempt property over-encumbered and therefore ripe for impairment. One would expect lenders to refuse to make such high-risk loans, but there may be times when self-interest or hard-to-detect collusion will lead to an abuse of § 522(f). On the other hand, refusing to apply the statutory formula as written may result in denying deserving debtors the fresh-start advantage § 522(f) was enacted to provide--for

7

>  example, if a drop in market value has left exempt property
>  over-encumbered by a judicial lien and a junior consensual
>  lien, and the judicial lienholder insists upon foreclosure.
>  With the competing equities both hard to weigh and finely
>  balanced, our task is simply to apply § 522(f)(2)(a) as
>  Congress wrote it.

In re Charnock, 318 B.R. 720, 729 (9th Cir. B.A.P. 2004) (quoting In re Kolich, 328 F.3d 406, 410 (8th Cir. 2003)). Despite these "complex" policy considerations, the Charnock court, like this one, considered itself obligated to apply the statute according to its plain terms. Charnock, 318 B.R. at 729.

But this does not mean that the judicial lien must be avoided at this time. In a chapter 13 case, a judicial lien can be avoided under § 522(f) only upon confirmation. In re Allred, 45 B.R. 676, 678 (Bankr. E.D.N.C. 1985). The "effect of the debtors' use of § 522(f)" is a factor the court will assess at confirmation when the court considers whether the debtor's chapter 13 plan meets the good faith standard set forth in 11 U.S.C. § 1325(a)(3). Allred, 45 B.R. at 681.

Longstanding precedent in this circuit, established in Neufeld v. Freeman, 794 F.2d 149 (4th Cir. 1986) and Deans v. O'Donnell, 692 F.2d 968 (4th Cir. 1982), requires the court to consider many factors, on a case by case basis, in determining whether a chapter 13 plan satisfies the good faith standard. Among those factors is the effect of lien avoidance under § 522(f). As this court explained in Allred:

8

> The determination that § 522(f) is available to the debtor[] . . . does not by itself mean that the lien will be avoided. The avoidance of the judicial lien will only be sustained if the debtors are able to propose a confirmable plan. To be confirmable, the debtors must meet the . . . "good faith" requirement of § 1325(a)(3). Some of the factors to be considered include: percentage of proposed repayment, debtor's financial condition, length of plan, employment history and prospects, nature and amount of unsecured claims, past bankruptcy filings, honesty in presenting facts, unusual or exceptional problems, degree of effort, dealings with creditors, and administrative burden on trustee. [citations omitted] An additional factor should be the effect of the debtors' use of § 522(f).

Allred, 45 B.R. at 680-81 (reciting the factors established in Deans, 692 F.2d 968, Neufeld, 794 F.2d at 152, and in opinions from other circuits). The court emphasized that the requirements of § 1325(b)(1) (debtor to devote all disposable income to the plan for three years) and the "good faith" requirement of § 1325(a)(3) "should help alleviate the potential abuses which might otherwise arise through the use of § 522(f) in chapter 13 cases." Allred, 45 B.R. at 681.

In the instant case, the debtor's plan proposes to make payments of $1,000 per month for thirty-six months with an additional one-time payment of $10,000. The trustee recently filed a motion to dismiss, which asserts that the debtor has failed to make plan payments and that the plan is not feasible. If the debtor's plan survives the trustee's motion to dismiss and the case proceeds to confirmation, then PCB's equity-themed arguments will become meaningful in the context of whether the debtor can propose a confirmable plan in good faith.

In PCB's view, the sole reason the debtor filed her bankruptcy petition was to eliminate her obligation to pay PCB, and her plan was not filed in good faith. According to PCB, the third mortgage to Suntrust Bank is fully secured by property other than the residence, and in any event is to be paid by Dr. Shah's dental practice. PCB also maintains that no funds had been advanced by Suntrust under the credit line at the time of the petition. Furthermore, PCB argues that the debtor's schedules deflate her spouse's salary from approximately $160,000 per year to approximately $22,000, and that her plan was not filed in good faith because it allows the debtor to retain two timeshares in Hawaii and Tahiti, while satisfying all creditors with the single exception of PCB. An analysis of those circumstances and other issues relevant to the determination of whether the debtor's chapter 13 plan is proposed in good faith will be considered in the appropriate context of confirmation of the debtor's plan.

For the foregoing reasons, if the debtor's plan is confirmed, an order shall be entered avoiding the judicial lien of Peoples Community Bank.

**SO ORDERED.**

**DATED:  July 8, 2005**

A. Thomas Small
United States Bankruptcy Judge